UNITED STATES OF AMERICA

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| NORTHWEST PIPELINE G.P., <br><br> Plaintiff, <br><br> v. <br><br> DEAN FRANCISCO and ALIDA FRANCISCO, <br><br> Defendants. | Case No. C08-0601MJP <br><br> ORDER RE: DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR CONDEMNATION |

This matter comes before the Court on Defendants Dean and Alida Francisco's motion to dismiss Plaintiff Northwest Pipeline G.P.'s ("Northwest") action for condemnation under § 717f(h) of the Natural Gas Act. Defendants seek dismissal pursuant to FRCP 12(b)(1) on the grounds that no jurisdiction exists over the subject matter of this action. Having considered the motion, response, reply, and all exhibits and declarations attached thereto (Dkt. Nos. 1, 5, 7, 8, 10-15), the Court DENIES Defendants' motion to dismiss at this time, pending further briefing on the issue of whether Plaintiff's Certificate adequately describes the restoration project at issue in this litigation.

**Background**

Plaintiff Northwest Pipeline G.P. ("Northwest") is a natural gas company that operates pipelines that transport natural gas. In November 2004 Northwest applied to the Federal Regulatory Energy Commission (FERC) for approval of a pipeline capacity replacement project. (Pl.'s Compl., Ex. A at 1.) In September 2005, FERC approved the project and issued a

**ORDER ON MTN
TO DISMISS — 1**

certificate of public convenience and necessity to Northwest authorizing the "construction and operation of the natural gas facilities" as described in the certificate (McLauchlan Decl., Ex. A at 12), "subject to certain environmental compliance conditions." (Id. at 1.) Under the Natural Gas Act (NGA), 15 U.S.C. §§ 717 et seq., a certificate of public convenience and necessity grants eminent domain authority to the certificate-holder in the appropriate circumstances. 15 U.S.C. § 717f(h).

Northwest's certificate did not expressly mention the defendants' land, but it did require Northwest to secure several state and federal permits to proceed with the pipeline project. (Powell Decl. ¶ 5.) Some of these permits were conditioned on fulfilling specific environmental tasks including the Jim Creek Restoration Project. (Id. at ¶ 5-6.) In order for Northwest to perform the restoration, it needed access to the defendants' property. (Franciscos' Aff. ¶ 9.) In June 2007 Northwest obtained permission from Defendants to access their property for "some surveying and light brush clearing." (Id. at ¶ 5.) It turned out, however, that the restoration needed to be performed on a portion of Defendants' property. (Pl.'s Compl. ¶ 8.) Defendants later discovered in August 2007 that "a contractor hired by Northwest had cut down and removed over an acre of timber on [Defendants'] land and was using a loader to stack brush in the area where a dry slough on [Defendants'] property connects with the Nooksack River." (Id. at ¶ 6.) Northwest had not notified Defendants that it would access their property to remove timber. (Id. at ¶ 7.) Defendants demanded that Northwest leave their property. (Id.) Northwest filed a complaint for condemnation against the Franciscos under 15 U.S.C. § 717f(h) in April 2008, and Defendants move to dismiss the action for lack of subject matter jurisdiction.

**Discussion**

*Jurisdiction Under the NGA*

Although there are no authorities directly on point, existing federal case law and statutes establish a general rule for district court jurisdiction under the NGA's eminent domain provision, 15 U.S.C. § 717f(h). First, FERC has power under the NGA to authorize significant activities of

natural gas companies. 15 U.S.C. § 717f(c) requires natural gas companies to obtain a certificate of public convenience and necessity from FERC in order to transport or sell natural gas, to undertake the construction or extension of any facilities used for the transport or sale of natural gas, or to acquire or operate any such facilities. 15 U.S.C. § 717f(c). All such activities must be specifically authorized by the certificate issued by FERC. Id. As such, "the Certificate is the most important element in determining the necessity for [certain activities including condemnation under the NGA]," and "a court should examine the Certificate to determine the parameters of the Certificate's authority." Transcont. Gas Pipe Line Corp. v. 118 Acres of Land, 745 F.Supp. 366, 372 (E.D. La. 1990).

At issue is whether this Court possesses subject matter jurisdiction over condemnation proceedings under 15 U.S.C. § 717f(h). This provision allows holders of certificates of public convenience and necessity to exercise eminent domain power via authorization by the appropriate United States district court or state court. Specifically, the NGA authorizes condemnation of private property "through the exercise of the right of eminent domain in the district court of the United States" in the following situations: (1) where the certificate holder cannot acquire the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas; and (2) where the certificate holder cannot acquire the necessary property for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines. 15 U.S.C. § 717f(h); Columbia Gas Transmission Corp. v. Exclusive Gas Storage Easement, 776 F.2d 125, 128 (6th Cir. 1985); Tenn. Gas Pipeline Co. v. 104 Acres of Land More or Less, 749 F.Supp. 427, 431 (D. R.I. 1990).

Defendants argue that because Northwest seeks to condemn property rights for the purpose of the Jim Creek Restoration—an activity not directly related to Northwest's construction or operation of its pipelines—Northwest does not satisfy the necessary elements to exercise eminent domain under § 717f(h) and therefore the Court lacks subject matter jurisdiction

**ORDER ON MTN
TO DISMISS — 3**

over the matter. Northwest argues that FERC determines the property rights subject to condemnation because FERC's certification process decides the scope of the pipeline project and any associated conditions on the project. (Pltf. Response at 3.) Thus, "[a]s the holder of the Certificate, Northwest has condemnation authority as necessary to complete the Project which FERC has determined public convenience and necessity requires." Id.

Northwest is correct with respect to the issue of subject matter jurisdiction. Defendants attempt to conflate the ultimate issue (whether Northwest may condemn Defendants' property) with the jurisdictional issue (whether this Court can adjudicate Northwest's right to condemnation). These are two separate questions. The answer to the first question is that the NGA gives this Court the right to adjudicate the jurisdictional issue; the second question (whether this Court can adjudicate the ultimate issue of the scope of condemnation authority) can also be answered in the affirmative. This conclusion finds support in Portland Natural Gas Transmission System v. 4.83 Acres of Land, a case in which a gas company brought condemnation proceedings in district court against a private landowner. 26 F.Supp.2d 332, 334 (D. N.H. 1998). The landowner asserted that subject matter jurisdiction was contingent on compliance with pre-construction conditions of the FERC certificate. See id. at 333. The court held that "[s]ince [the landowner] has not agreed to allow Portland Gas . . . to acquire the land at issue, Portland Gas was entitled to initiate this action under § 717f(h)." Id. at 335.

The facts of Portland Natural Gas are different from the instant case (Portland Natural Gas involved property which clearly constituted pipeline land). For purposes of determining subject matter jurisdiction, however, Portland Natural Gas demonstrates that when a certificate holder cannot acquire property deemed necessary by the FERC certificate, it may initiate condemnation proceedings under § 717f(h) in district court. This, of course, does not mean that the court will grant eminent domain power to the certificate holder; it simply means that the court has the authority under the provision to consider the claim. Accordingly, because Defendants have not allowed Northwest to acquire their land and because the land may be deemed necessary by the

**ORDER ON MTN
TO DISMISS — 4**

certificate, Northwest is entitled to *initiate* condemnation proceedings in district court.

The assertion that this Court has jurisdiction over this case finds further support in the Ninth Circuit and the Supreme Court. Generally, when "'[t]he question of jurisdiction and the merits of [the] action are intertwined,' dismissal for lack of subject matter jurisdiction is improper." Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehole and Easement in the Cloverly Subterranean, Geological Formation, 524 F.3d 1090, 1094 (9th Cir. 2008) (citing Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)). Additionally, the United States Supreme Court noted in Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 89 (1998) that a district court has jurisdiction when "the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another." [inside quotations omitted] This rule holds except in cases where the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." Id.

In the instant case, Northwest's complaint for condemnation is not clearly immaterial and intended solely to obtain jurisdiction, nor "wholly insubstantial and frivolous." Additionally, Northwest's "right to recovery" (i.e., exercise of eminent domain authority) depends on interpretation of the NGA, a federal statute that provides the basis for both the subject matter jurisdiction of the district court and the plaintiff's claim for relief. Northwest will acquire eminent domain authority over Defendants' land if the Court rules that Northwest satisfied the necessary elements for condemnation under § 717f(h) (which would require construction of the legislative intent/purpose of the NGA). In Williston Basin, the Ninth Circuit conceded the validity of the defendant landowners' substantive argument—that the plaintiff gas company's certificate did not authorize condemnation of the defendants' land—but *still* found that the district court had jurisdiction to consider the gas company's claim. Id. at 1096.

This case turns on interpretation of whether the certificate, by requiring Northwest to

**ORDER ON MTN
TO DISMISS — 5**

obtain certain federal and state permits that in turn are conditioned on the Jim Creek Restoration, implicitly includes the Jim Creek land and thereby authorizes the restoration project—even though the certificate never expressly mentions the Jim Creek Restoration. Such a determination falls under the district court's jurisdiction under § 717f(h) of the NGA, in keeping with the statute's mandate "to evaluate the scope of a certificate and to order condemnation of property as authorized in the certificate." Tenn. Gas, 749 F.Supp. at 430.

*Defendants' Expiration of Certificate Authority Argument*

Defendants argue that even if Northwest's certificate provides condemnation authority to complete the restoration project, "Northwest's authority to construct any facilities under the certificate expired on September 13, 2007." (Defs.' Mot. at 11.) Defendants contend that Northwest's certificate, granted on September 13, 2005, ordered that "construction of any facilities authorized under the certificate must be completed within two years" and that this order now bars Northwest from completing the restoration. (Id.) Northwest, however, argues that "environmental permits that serve as the basis for the conditions imposed do not require completion of the condition within the time period" and that "FERC did not place a time limit on when mitigation measures required by local permits must be carried out." (Pltf. Response at 22.) The Court agrees.

Defendants confuse "constructing and making available for service" the pipeline facilities for which Northwest received its FERC certificate with the scope of the certificate as a whole. The certificate clearly envisioned activities beyond the construction of the pipeline—as reflected by the inclusion of certain environmental compliance conditions—but it only specified a time limit of two years on the completion of the pipeline facilities. (See McLauchlan Decl., Ex. A at 11). Defendants' attempt to stretch the two-year limit to all certificate-related activity is not supported by the language of Northwest's certificate.

*Northwest's Collateral Attack Argument*

Finally, Northwest asserts that Defendants' argument constitutes an impermissible

**ORDER ON MTN
TO DISMISS — 6**

collateral attack on FERC. This Court is not persuaded by this contention. In accordance with § 717r of the NGA, disputes over the propriety or validity of certificates of public convenience and necessity must first be brought to FERC for rehearings, and appeals may thereafter be brought in the United States Court of Appeals. See Tenn. Gas, 749 F.Supp. at 430. Thus, as discussed, district courts have a limited scope of review under § 717f(h). District courts "are limited to jurisdiction to order condemnation of property in accord with a facially valid certificate," id., and "[t]he district court's function under the statute is not appellate but, rather, to provide for enforcement." Williams Natural Gas Co. v. Okla. City, 890 F.2d 255, 264 (10th Cir. 1989). The Franciscos' case fits within the limited review of the district courts under § 717f(h) "to evaluate the scope of a certificate and to order condemnation of property as authorized in the certificate." Tenn. Gas, 749 F.Supp. at 430. The defendants' argument consists of two main points: 1) the district court lacks jurisdiction over Northwest's complaint for condemnation; and 2) the Jim Creek Restoration is not within the scope of Plainiff's FERC certificate. Neither of the defendants' main arguments involve questions of the propriety or validity of Northwest's certificate or FERC's authority. Accordingly, the defendants' position does not constitute an impermissible collateral attack on FERC.

*Jim Creek Restoration and the Scope of the Certificate*

In considering this aspect of the motion, the Court must address three issues. The first issue is: to what extent may FERC authorize gas companies to condemn properties pursuant to the NGA's eminent domain provision? The second issue is: does the Jim Creek Restoration, as a pre-condition to the required permits for pipeline operation, fall within the NGA's eminent domain provision? The third issue is: does Northwest's Certificate, by requiring Northwest to obtain permits that are conditioned on completing the restoration, describe the Jim Creek Restoration sufficiently to authorize condemnation of Defendants' property? The Court answers the first two questions in the affirmative, but calls for further briefing on the issue of whether Northwest's Certificate describes the Jim Creek Restoration sufficiently to permit condemnation

**ORDER ON MTN
TO DISMISS — 7**

under the present authorization.

At first blush, § 717f(h) appears narrow in scope. The statute on its face appears to grant eminent domain authority only under certain specific circumstances which an environmental restoration project required by certain permits that are in turn required by FERC does not appear to meet. The restoration project does not constitute a right-of-way to construct, operate, or maintain pipelines nor a location of stations or equipment necessary for the operation of the pipelines, as required on the face of the statute. There is persuasive precedent, however, that this does not preclude condemnation authority.

Although there is limited case law on this issue, existing authorities indicate that the provision has a broader scope than suggested by its plain language. In Columbia Gas Transmission Corp. v. Exclusive Gas Storage Easement, see 776 F.2d 125, 125-127 (6th Cir. 1985), the gas company attempted to condemn private property (not specifically mentioned in its certificate) to use for underground storage of natural gas. Although § 717f(h) does not specifically grant condemnation authority for underground storage purposes, the Court held that the company operated underground storage fields "as an integral part of its natural gas transmission function, " (Id. at 126) and "the use of condemnation for underground facilities is within the spirit and intent of the [Natural Gas] Act." Id. at 128-29. Specifically, the Court reasoned that underground gas storage areas are a "necessary and integral" part of the operation of pipelines and that the NGA grants eminent domain authority to "insure the operation of stations or equipment necessary to the proper operation of natural gas pipelines." Id. at 129.

Furthermore, because the proper operation of pipelines is of great importance to the public, "underground facilities fall within the intent of the legislature to provide the use of eminent domain to acquire the right-of-way for stations or equipment necessary to the proper operation of gas pipelines," (Id.), and "to provide the means by which orders of [FERC] could be implemented." Natural Gas Pipeline Co. of Am. v. Iowa State Commerce Comm'n, 369 F.Supp. 156, 159 (S.D. Iowa 1974). Accordingly, condemnation for purposes that are necessary to the

**ORDER ON MTN**
**TO DISMISS — 8**

proper operation of pipelines (such as underground storage facilities) comports with the purpose of the NGA and is permissible under § 717f(h)—even though the plain language of the provision may not expressly describe such purposes. The message of these cases is clear: anything "necessary and integral" to the creation of an authorized pipeline project, whether or not it falls within the strict language of § 717f(h), can be rightfully subject to condemnation authority under the NGA

Thus, the Court must determine whether the Jim Creek Restoration is "necessary and integral" to the operation of Northwest's pipelines. Clearly, an environmental restoration project by itself is not necessary to proper operation of pipelines. Completion of the restoration project, however, is required in order for Northwest to obtain certain federal, state, and local permits to operate its pipelines. As such, the Jim Creek Restoration is "necessary and integral" to the operation of Northwest's pipelines because the permits themselves are "necessary and integral," prerequisites for completion. This conclusion finds further support in the fact that FERC requires certificate holders to comply with state and local authorities, Maritimes & NE Pipeline, L.L.C., 81 FERC P 61166, 61730 (1997), and Congress intended the NGA "to provide the means by which orders of [FERC] could be implemented." Natural Gas Pipeline Co., 369 F.Supp at 159.

Turning to the final issue which must be resolved, the question remains whether Northwest's certificate sufficiently describes the Jim Creek Restoration and, as a result, authorizes condemnation of the specific property which this litigation concerns. As noted above, the limited role of the district courts under § 717f(h) is "to evaluate the scope of a certificate and to order condemnation of property as authorized in the certificate." Tenn. Gas, 749 F.Supp. at 430. Courts have held that even if the target property is necessary for the proper operation of pipelines, a gas company cannot exercise condemnation power if its certificate does not describe that property. See Columbia Gas, 776 F.2d at 127; see Williston Basin, 524 F.3d at 1099. Condemnation is permissible in such cases, but only if the company obtains a valid amended certificate describing the necessary property. See Columbia Gas, 776 F.2d at 129.

**ORDER ON MTN**
**TO DISMISS — 9**

This issue was broached but not fully addressed in the briefing already submitted; plus, the parties did not have the benefit of the Court's analysis concerning the scope of the condemnation authority and the "necessity" of environmental remediation to this pipeline project. Therefore, the Court is calling for additional briefing on the issue of whether Northwest's certificate sufficiently describes the Jim Creek Restoration to authorize condemnation of the specific property which this litigation concerns. This matter will addressed by simultaneous briefing; i.e., each side will submit a 12-page brief on the same deadline. The briefs must be filed on **October 14, 2008.** Following receipt and review of that briefing, the Court will issue a final ruling on Defendants' motion to dismiss.

**Conclusion**

The Court finds that the NGA gives this Court the right to adjudicate the jurisdictional issue raised by this action, and that the statute further bestows the authority to determine whether a condemnation request falls within the parameters of a FERC certificate. The Court read the applicable case law as holding that any activity "necessary and integral" to the completion of a pipeline project may properly be the subject of condemnation proceedings, including an environmental restoration project which s a condition precedent to state permitting required by a FERC certificate.

However, the condemnation request must concern an activity which is adequately described in the certificate; lacking that, the moving party must seek an amendment of the certificate to encompass the sought-after condemnation. The Court calls for additional briefing on that issue.

The clerk is directed to send copies of this order to all counsel of record.

Filed this 3rd day of October, 2008.

Marsha J. Pechman
U.S. District Judge

ORDER ON MTN
TO DISMISS — 10